UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TREMAINE L. BAILEM,

      Petitioner,

v.                            Case No: 2:16-cv-18-FtM-38MRM

STATE OF FLORIDA and
SECRETARY, DOC,

      Respondents.
_____/

## OPINION AND ORDER[1]

This matter comes before the Court on Petitioner, Tremaine L. Bailem's Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. #10) filed on February 4, 2016. The Respondent, Julie Jones, Secretary of the Department of Corrections, filed her Response in Opposition (Doc. #19) on August 16, 2016. Bailem filed his Reply Brief to the Respondent's Opposition (Doc. #23) on September 19, 2016. The Petition is fully briefed and ripe for the Court's review. Respondent stipulates the Petition was timely filed.

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

## BACKGROUND

On February 3, 2011, Bailem shot and killed Johnny Jackson in the parking lot of Palmetto Court apartment complex, in Fort Myers, Florida. Jackson was pronounced dead at the scene. On March 2, 2011, Bailem was charged by information with second degree murder, Count I, possession of a firearm by a convicted felon, Count II, and aggravated assault with a firearm, Count III. On December 3, 2012, Bailem was tried before a jury and found guilty on all three counts. Bailem was sentenced to life in prison for the second degree murder charge, a concurrent sentence of fifteen years for the felon in possession of a firearm, and a concurrent sentence of five years on the charge of aggravated assault with a firearm.

On January 7, 2013, Bailem appealed. However, appellate counsel filed an *Anders* brief with the appellate court stating that there were no meritorious grounds for the appeal.[2] Bailem then filed an appeal *pro se* with the appellate court. On December 11, 2015, the Second District Court of Appeal affirmed Bailem's judgment and sentence. Mandate issued on January 5, 2016.

## STANDARDS of REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), governs this action. *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007). Respondent concedes that the Petition is timely filed in this Court, and this Court agrees. (Doc. #12, at 3-4).

---

[2] In *Anders v California*, 386 U.S. 738, 743 (1967) appellate counsel filed a letter with the California District Court of Appeal that he would not brief the appeal because the appeal has no merit.

2

Under the AEDPA, the standard of review is greatly circumscribed and highly deferential to the state courts. *Alston v. Fla. Dep't of Corr.*, 610 F.3d 1318, 1325 (11th Cir. 2010) (citations omitted). The AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). The following legal principles apply to this case.

### A. Deference to State Court Decisions

A federal court must afford a high level of deference to the state court's decision. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Cullen v. Pinholster*, 563 U.S. 170, 181(2011). "This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that the state-court decisions be given the benefit of the doubt." *Id.* (internal quotations and citations omitted). *See also Harrington v. Richter*, 562 U.S. 86, 102 (2011) (pointing out that "if [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be.").

Both the Eleventh Circuit and the Supreme Court broadly interpret what is meant by an "adjudication on the merits." *Childers v. Floyd*, 642 F.3d 953, 967-68 (11th Cir. 2011). Thus, a state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits that warrants deference by a federal court. *Id.*;

see also *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). Indeed, "unless the state court clearly states that its decision was based solely on a state procedural rule [the Court] will presume that the state court has rendered an adjudication on the merits when the petitioner's claim 'is the same claim rejected' by the court." *Childers v. Floyd*, 642 F.3d at 969 (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)).

"A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme] Court." *Thaler v. Haynes*, 559 U.S. 43, 47 (2010); *see also Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)) (recognizing "[c]learly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision). "A state court decision involves an unreasonable application of federal law when it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case, or when it unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Ponticelli v. Sec'y, Fla. Dep't of Corr.*, 690 F.3d 1271, 1291 (11th Cir. 2012) (internal quotations and citations omitted). The "unreasonable application" inquiry requires the Court to conduct the two-step analysis set forth in *Harrington v. Richter*, 562 U.S. at 86. First, the Court determines what arguments or theories support the state court decision; and second, the Court must determine whether "fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior" Supreme Court decision. *Id.* (citations omitted). Whether a court errs in determining facts "is even more deferential than under a clearly erroneous standard of review." *Stephens*

*v. Hall*, 407 F.3d 1195, 1201 (11th Cir. 2005). The Court presumes the findings of fact to be correct, and petitioner bears the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Supreme Court has held that review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 131 S. Ct. at 1398. Thus, the Court is limited to reviewing only the record that was before the state court at the time it rendered its order. *Id.*

### B. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d). *Newland v. Hall*, 527 F.3d 1162, 1183 (11th Cir. 2008). Post-AEDPA, the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case. *Newland*, 527 F.3d at 1184. In *Strickland*, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, *i.e.*, "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, *i.e.*, there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a

5

fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 688; *see also Bobby v. Van Hook*, 558 U.S. 4, 8 (2009); *Cullen v. Pinholster*, 131 S. Ct. at 1403 (2011).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." *Bobby*, 588 U.S. at 8 (internal quotations and citations omitted). It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny. *Id.* A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. An attorney is not ineffective for failing to raise or preserve a meritless issue. *Ladd v. Jones*, 864 F.2d 108, 109-10 (11th Cir. 1989); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

### C. Exhaustion of State Remedies and Procedural Default

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. *See* § 2254(b)1)(A); *O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones,* 348 F.3d 1355, 1358–59 (11th Cir. 2003).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim. *See Snowden v. Singletary,* 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its' prisoners federal rights.'" (quoting *Duncan v. Henry,* 513 U.S. 364, 365 (1995))). A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt,* 348 F.3d at 1358. The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.,* 377 F.3d 1317, 1344 (11th Cir. 2004).

**DISCUSSION**

Bailem now petitions the Court for habeas corpus relief asserting two grounds for relief: (1) appellate counsel was ineffective depriving Petitioner of his due process rights and access to courts; and (2) the trial court denied him his Sixth Amendment right to confront his accuser. Respondent replies that ground one is unexhausted and ground two lacks merit.

*Ground One*

Bailem argues that appellate counsel was ineffective because he did not request the appeals court to correct or alternatively supplement the trial record showing that he demanded speedy trial on June 20, 2011. Bailem continues that he filed a Notice of Expiration of Speedy Trial on November 14, 2011, followed by a motion to discharge on December 28, 2011. Appellate counsel refused to bring up the speedy trial issue on appeal.

Respondent answers that Bailem did not exhaust this claim in a Rule 9.141(d) petition in state court; therefore, the claim is unexhausted and due to be denied. Florida Rule of Criminal Procedure 9.141(d) governs petitions alleging ineffective assistance of appellate counsel. Rule 9.141(d) states in pertinent part that "[p]etitions alleging ineffective assistance of appellate counsel shall be filed in the court to which the appeal was taken." Bailem did not pursue an ineffective assistance of counsel claim in the Second District Court of Appeal. Respondent argues that since Bailem did not pursue his Rule 9.141(d) claim in the Second District Court of Appeal his Petition is unexhausted. Respondent argues the entire Petition should therefore be denied.

Respondent's argument is well taken. In order for a federal court to provide habeas corpus relief, the claim must first have been exhausted at the state court level. *Pruitt,* 348 F. 3d at 1358–59. While Bailem states that he filed an emergency "Writ of Mandamus" with the Florida Supreme Court, to correct the missing demand for speedy trial, he took no action to appeal his claim that appellate counsel was ineffective in the Second District Court of Appeal as required by Rule 9.141(d). Thus, Bailem's ineffective assistance of appellate counsel claim is unexhausted and denied as such.

Further, even if Bailem had exhausted his claim in Ground One, it would still fail on the merits. Bailem claims he filed a demand for speedy trial on June 20, 2011. The Clerk of Court's record shows that Bailem filed a demand for speedy trial on January 30, 2015, with the certificate of service on the demand dated June 20, 2011. The clerk's office also shows that a demand for speedy trial was filed on October 18, 2012.

Florida Rule Criminal Procedure 3.191 reads in pertinent part:

> **(b) Speedy Trial upon Demand.** Except as otherwise provided by this rule, and subject to the limitations imposed under subdivisions (e) and (g), every person charged with a crime by indictment or information shall have the right to demand a trial within 60 days, by filing with the court a separate pleading entitled "Demand for Speedy Trial," and serving a copy on the prosecuting authority.

Bailem's trial was held from December 3, 2012 through December 5, 2012, within the sixty days the October 18, 2012 demand for speedy trial. Therefore, there was no speedy trial violation. The docket sheet from the clerk of court's record shows that the alleged June 20, 2011 speedy trail demand was not filed until January 30, 2015. No evidence was presented that would dispute the clerk of court's records. Consequently, there was no violation of Bailem's right to speedy trail, so even if Bailem had exhausted

9

his claim it would still fail for lack of merit. Accordingly, Bailem cannot receive relief under Ground One.

### Ground Two

Bailem avers that his Sixth Amendment right to confront his accuser was violated because the State medical examiner who testified at his trial did not conduct the autopsy nor author the autopsy report used as evidence at trial.[3] Respondent argues that since Ground One is unexhausted the entire habeas should be denied. Respondent further argues that an autopsy report is not a testimonial statement and therefore, Bailem's Sixth Amendment right to face his accuser would not apply to the report. In the alternative, Respondent argues the trial court's ruling allowing another M.E. to testify was harmless error.

While Respondent argues that an autopsy report is not testimonial, in *United States v. Ignasiak*, 667 F. 3d 1217, 1229 (11th Cir. 2012), the Eleventh Circuit held that the autopsy reports used as evidence in trial can be testimonial. Dr. Ignasiak operated a family medical clinic in Freeport, Florida a rural town in the Florida panhandle. Dr. Ignasiak sold his medical practice to Hospital Corporation of America (HCA) in 2005 and new physicians were brought in to operate the clinic. After taking over the clinic, the new physicians noticed that Dr. Ignasiak was prescribing large quantities of controlled substances to a large portion of his patients. HCA reported its concerns to the authorities and the government begin an investigation into Dr. Ignasiak's practice. The investigations

---

[3] Dr. Wendolyn Sneed performed the autopsy on Jackson, however, Dr. Sneed was unable to attend Jackson's trial. Dr. Robert Pflazgraf agreed to fill in for Dr. Sneed and testified as to the results of the autopsy from the medical examiner's report.

10

demonstrated that several of Dr. Ignasiak's patients who died under his care, had been prescribed large quantities of controlled substances. Dr. Ignasiak was subsequently indicted on fifty-four counts charging him with fourteen counts of healthcare fraud and forty counts of dispensing controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

During Ignasiak's trial, the Government admitted autopsy reports from five of his former patients — patients who were not named in Dr. Igansiak's indictment. The autopsy reports found that the patients died, in part, from intoxication caused by the controlled substances prescribed by Dr. Ignasiak. However, the medical examiner (M.E.) that performed the autopsies was not available to testify. Instead, another M.E., Dr. Minyard testified as to the autopsy findings. The Jury convicted Dr. Ignasiaks on the forty counts of controlled substances violations but acquitted on the fourteen counts of health care fraud. Igansiak appealed his conviction.

On appeal, Igansiak argued the trial court violated the confrontation clause by allowing the Government to introduce five autopsy reports that the testifying M.E did not author. The Eleventh Circuit agreed with Igansiak's argument and held that the autopsy reports were testimonial and subject to the confrontation clause. The Eleventh Circuit held in pertinent part:

> Our conclusion that the autopsy reports in this case are testimonial compels the rejection of Dr. Minyard's live in-court testimony as a constitutionally adequate surrogate for the actual medical examiner who performed the autopsy. Although Dr. Minyard was qualified as an expert, there is no evidence that she observed the autopsies in question. Therefore, Dr. Minyard is in precisely the same position as the surrogate whose testimony was rejected in *Bullcoming.* Admission of the autopsy reports on solely this testimony— absent evidence that the actual medical examiners who

performed the autopsy were unavailable and the accused had a prior opportunity to cross-examine them—thus violated Ignasiak's Sixth Amendment rights under the Confrontation Clause.

*Ignasiak*, 667 F.3d at 1233.

The *Ignasiak* decision is easily differentiated from the facts in this case. In *Ignasiak*, the Government was seeking to establish the cause of death for patients who were illegally prescribed controlled substances by Dr. Ignasiak. Here the cause of death was established by eye witness testimony.

Eye witnesses testified that they saw Bailem shoot Jackson in the parking lot of Palmetto Court. Heather Jackson (Heather), the decedent's wife, testified that she was sitting in the driver's side of her automobile with her door opened when Bailem walked toward her car with a gun in his hand. (Ex. 8, at 154). Heather testified as follows:

State: So now we have your husband going back to talk to the person you've identified as [Bailem].

Heather: Yes.

State: And what happened?

Heather: He pulled out a gun and shot him in the chest.

State: What was your husband doing at that point in time when he was shot in the chest?

Heather: Walking backwards like this.

State: Was that in reaction to Mr. Tremaine Bailem pointing a gun at him?

Heather: Yes.

State: And what happened after Mr. Jackson was shot in his chest?

Heather: He ran towards me, but I got out of the car and I was — you know, as I seen him shoot him, got out of the car and I was going towards him but my husband was running, trying to get in the car.

Heather testified that Jackson made it back to the car and entered the vehicle from the driver's side. Heather continued that she stood between Bailem and her husband begging him not to shoot Jackson. Bailem then turned the gun on Heather. Heather said she backed away from the vehicle and Bailem. After Heather backed away from Bailem turned attention back to Jackson.

Heather's testimony continued as follows:

State: Where did [Bailem] go?

Heather: He shot my husband when my husband was in the car, and he was following him around the car and he — my husband got into the front of the car. And he fell on the car on his face on the ground, and he shot him in the back a couple of more times.

State: So Mr. Bailem actually went around the car and proceeded toward the front of the car?

Heather: Yes.

State: And fired two additional shots into your husband while he laid face down?

Heather: Yes.

(Ex. 8, 155-57).

In addition to Heather's testimony other eye witnesses testified that they observed Bailem shoot Jackson. Champain Cody testified that she hear screaming outside. When she looked out her window, she saw Bailem chasing Jackson with a "silver western-like type of gun." Cody observed Bailem stand over Jackson and shoot him while he laid face down on the ground. (Ex. 8, at 270). Shannon Crumbly, who was at the Palmetto Court playground, saw Bailem holding a gun and shooting at Jackson. (Ex. 8, at 207-08).

After receiving a 911 emergency call, Bunny Adams, a Lee County EMS paramedic, arrived at the crime scene and observed Jackson face down on the ground. Adams and her partner turned Jackson over. Adams testified that "there was nothing we were going to do to change what happened to him. He was dead." (Ex. 8, at 257). Unlike *Ignasiak*, where the cause of death was determined by the autopsy report, the cause of Jackson's death was firmly established by eyewitness accounts, without the use of the autopsy report in question. Thus, whether or not the autopsy report here was testimonial in nature is irrelevant because the cause of death was firmly established before the autopsy report was introduced into evidence.

Moreover, even if constitutional error was found in this habeas proceeding, it is still subject to a harmless error analysis under *Brecht v. Abrahamson*, 507 U.S. 619 (1993). The *Brecht* test determines whether a trial court "error had substantial and injurious effect or influence in determining the jury's verdict." "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice." *Brecht,* 507 U.S. at 637 (internal citations and quotation marks omitted).

Applying *Brecht* to Bailem's case, the Court concludes that even had the trial court omitted the autopsy report, the result of the trial would not have been different. *See Hittson v. GDCP Warden*, 759 F. 3d 1210, 1233 (11th Cir. 2014) (holding that federal courts must evaluate constitutional errors under the harmless error standard in *Brecht*). Stated differently the Court does not find that the admission of the autopsy report affected the verdict. The cause of Jackson's death was clearly established by eyewitness testimony and the observations of Lee County EMS paramedics. In light of the entire trial

14

record, Bailem fails to demonstrate, actual prejudice under *Brecht*. Thus, any constitutional error by the trial court in admitting Jackson's autopsy report and allowing an M.E. other than the author of Jackson's autopsy report to testify at trial was harmless error. Because Bailem failed to demonstrate any prejudice by the trail court's decisions he is not entitled to any relief on Ground Two.

## CONCLUSION

Ground One, ineffective assistance of appeals counsel is unexhausted and lacks merit. Ground Two, allowing the autopsy report into evidence and testimony by an M.E. who did not author the autopsy report was harmless error because no prejudice resulted by admitting the evidence.

Accordingly, it is now

**ORDERED:**

Petitioner, Tremaine L. Bailem's Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. 2254 (Doc. #10) is **DENIED**. The Clerk of the Court is directed to enter judgment accordingly, terminate all pending motions, and close the file.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO FILE APPEAL *IN FORMA PAUPERIS*

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 184 (2009). "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district

court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further", *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003)(citations omitted). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

**DONE** and **ORDERED** in Fort Myers, Florida this 26th day of June, 2017.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:
Tremaine L. Bailem
All Counsel of Record
SA: FtMP-2